2007 VT 36

**STATE of Vermont v. Joshua J. MUHAMMAD**

[927 A.2d 769]

No. 05-475

¶ 1. May 8, 2007. Defendant appeals his conviction for sale of cocaine. He asserts that the district court violated his consti-

tutional rights and committed reversible error by denying his motion to dismiss based on the State's use of warrantless electronic monitoring, and by allowing a confidential source to refresh her recollection with the suppressed recording prior to testifying. He further asserts that the court erred by permitting the State to introduce evidence of other bad acts. We affirm.

¶ 2. The events underlying defendant's conviction took place on March 4, 2004. A confidential source agreed to cooperate in a controlled drug buy with the Drug Enforcement Administration (DEA) in exchange for consideration on her own federal drug charge. On the date at issue, she contacted Lauren Desautels, the woman defendant was living with, and set up a deal to purchase cocaine. DEA officers then searched the source and her car, and equipped her with a wire and money to purchase the drugs. Desautels failed to meet the source at the predetermined location, but the source later received a phone call from a man telling her to come to the house where defendant and Desautels lived together. The officers followed the source to the residence and watched her enter through the front door. About fifteen minutes later, the source emerged from the home. She met the officers at a prearranged place, and handed over a bag containing cocaine. She then informed the officers that defendant had given her the drugs.

¶ 3. In April 2004, defendant was charged with one count of selling cocaine.* 18 V.S.A. § 4231(b)(2). Prior to trial, defendant filed a motion to exclude and dismiss on the grounds that failure to obtain a warrant for the electronic monitoring in his home violated his rights

---

* Defendant was also charged with one count of domestic assault; however, the two counts were tried separately and defendant now appeals only the drug conviction.

under the Vermont Constitution. In response, the State indicated that it would not use the illegal recording of the transaction at trial, or evidence derived from it, but would call the source to testify. The court ordered that the recording be suppressed, but denied defendant's motion to dismiss.

¶ 4. The day before trial, the court held a hearing to resolve evidentiary issues raised by the State. Among these issues was whether the State could use the suppressed recording to refresh the source's recollection prior to trial, as the State intended to have her listen to the recording that afternoon. The court ruled that the source could refresh her recollection with the suppressed recording. The following morning, immediately preceding trial, defendant renewed his opposition to the State's use of the recording to refresh the source's recollection. The court, however, determined that the issue was moot because the source had already listened to the recording. At trial, defendant was convicted of selling cocaine in violation of 18 V.S.A. § 4231(b)(2).

¶ 5. After trial, defendant sought a new trial on the ground that the court erroneously admitted evidence of other bad acts through a DEA officer's testimony. See V.R.E. 404(b) (prohibiting evidence of other crimes, wrongs, or acts to prove propensity to act in conformity therewith). The court denied the motion, finding that defendant had "opened the door to the introduction of the evidence" by cross-examining the officer on the theory that there was no evidence linking defendant to drug activity and that the officers acted out of racial bias because defendant was a black man living with a white woman. This appeal followed.

¶ 6. Defendant now claims that the trial court committed reversible error in several respects. He argues that the court erred by (1) denying his motion to dismiss based on the State's violation of his constitutional rights, (2) allowing the source

to refresh her recollection using the suppressed evidence, and (3) permitting the State to introduce evidence of other bad acts at trial.

¶ 7. Defendant's first argument — that illegal wiretapping requires the trial court not only to exclude evidence derived from the wire but also to dismiss the case outright — fails for lack of support. We first addressed the constitutionality of warrantless electronic monitoring conducted in the home in *State v. Blow,* where we held that such surveillance violates Chapter I, Article 11 of the Vermont Constitution. 157 Vt. 513, 520, 602 A.2d 552, 556 (1991); see also *State v. Geraw,* 173 Vt. 350, 357-58, 795 A.2d 1219, 1225 (2002) (affirming trial court's grant of motion to suppress audio recording of police interview in defendant's home as violative of Article 11). We noted, however, the "distinction between electronically recorded evidence obtained in a suspect's home by an informant posing as a would-be drug customer and testimony from such an informant who uses only senses and memory." *Blow,* 157 Vt. at 519-20, 602 A.2d at 556 (clarifying that our holding did not conflict with the outcome in *State v. Zaccaro,* 154 Vt. 83, 95, 574 A.2d 1256, 1263 (1990), where the trial court excluded recordings taken from a body microphone but the conviction did not rely on the suppressed evidence and was therefore upheld). Here, the trial court properly suppressed the recording as well as evidence derived from use of the electronic monitoring device. Despite wearing a wire, the source was an eyewitness to the drug transaction at defendant's home and, as such, was entitled to testify as to her direct observations — observations she would have made regardless of the wire. Contrary to defendant's assertions, the fruit-of-the-poisonous-tree doctrine does not apply here, as the testimony presented at trial was independently based on the witness's "senses and memory" and did not derive

from the unlawful monitoring. See *State v. Dupaw*, 134 Vt. 451, 453, 365 A.2d 967, 968 (1976) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963), for the proposition that evidence is not fruit of the poisonous tree if it was obtained by "means sufficiently distinguishable" from the "primary illegality"). Nothing in our case law leads us to the conclusion that electronic monitoring in violation of Article 11 compels dismissal, and the trial court's denial of defendant's motion to dismiss was therefore appropriate.

¶ 8. Defendant's next claim of error is likewise unavailing. He asserts that the trial court committed reversible error when it allowed the source to listen to the suppressed recording to refresh her memory prior to testifying but failed to ensure "that the [source] actually [had] a present recollection and that otherwise inadmissible evidence [did] not slip in inadvertently for its truth." *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 93 n.17 (2d Cir. 1984). At trial, however, the source testified to her present recollection, stating that she had "a pretty good memory of what happened" on the day of the drug buy and that her testimony was not based on the "refreshings" with police officers the day before. She testified as an eyewitness-participant to the drug transaction, and was ably cross-examined by defense counsel and impeached by her earlier deposition testimony. Much like the situation in *Zaccaro*, where we found that a police officer's alleged use of suppressed evidence to refresh his recollection was harmless because the defendant failed to show prejudice, we can discern no adverse effect on defendant here. 154 Vt. at 94-95, 574 A.2d at 1263. The critical question under Article 11 is whether the illegal recording or any evidence derived therefrom was introduced into evidence; it was not. Barring such a situation, defendant's claim of reversible error fails.

¶ 9. Finally, we reject defendant's argument that the trial court erred by admitting evidence of defendant's other drug-related activity and his involvement in an assault. Defendant claims that the evidence was admitted in violation of Vermont Rule of Evidence 404(b) because its only relevance was to show defendant's propensity to engage in criminal conduct. See *State v. Catsam*, 148 Vt. 366, 380, 534 A.2d 184, 193 (1987) (maintaining that other bad act evidence relevant only to show defendant's propensity for criminality is "absolutely inadmissible"). The record shows, however, that the court allowed the State to introduce evidence of defendant's involvement in another drug transaction on March 24 and a later assault only after defense counsel opened the door to its introduction. Specifically, defense counsel cross-examined the DEA officer about his knowledge of defendant prior to the controlled buy, implying that the officer had no information connecting defendant to drug activity at the time he began his investigation of defendant. Furthermore, the defense questioned the officer about surveillance of defendant's home that took place between late January and March 4, suggesting that because the DEA officers did not gather enough evidence against defendant for a search warrant or arrest during that period, there was *no* evidence linking defendant to drug sales. Finally, the defense asked the officer about a search of defendant's home and car on April 18, more than a month after the date of the controlled buy. This prompted the officer to respond that nothing linking defendant to drugs was found during the search. The trial court allowed the State to introduce testimony about defendant's March 24 drug activity to rebut the inference created by defense counsel that the officers had no reason to suspect defendant other than some bias against him. Likewise, the court allowed testimony that the April 18 search was pursuant to an assault charge, to counter the suggestion that the officers were merely on a fishing expedition for

drug-related evidence and ultimately found nothing. The trial court was entitled to use its discretion in admitting the evidence under Rule 404(b), not to show a propensity for criminality, but to correct the misimpression of bias created by the defense. *State v. Recor*, 150 Vt. 40, 44, 549 A.2d 1382, 1385-86 (1988) (sanctioning State's presentation of other bad acts in response to defense counsel's impeachment of witness's credibility "by painting an incomplete picture of unwarranted bias"); see also *State v. Anderson*, 2005 VT 17, ¶ 7, 178 Vt. 467, 868 A.2d 716 (mem.) (stating that review of trial court decision to admit evidence of other crimes, wrongs, or acts under Rule 404(b) is for abuse of discretion).

¶ 10. We agree with defendant that the trial court failed to conduct a proper Rule 403 balancing test in conjunction with its 404(b) ruling. V.R.E. 403 (allowing otherwise admissible evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice"). We have previously stated that the balancing test goes "hand in glove" with a Rule 404(b) determination, and must be conducted on the record, where a specific objection is made. *State v. Shippee*, 2003 VT 106, ¶ 11, 176 Vt. 542, 839 A.2d 566 (mem.). Here, however, defendant failed to make a specific objection to the admission of the March 24 transaction and the later assault at trial, and therefore the Rule 403 claim was waived, absent a showing of plain error. V.R.E. 103(a)(1), (d) (error cannot be predicated upon a ruling that admits evidence unless a timely objection is made "stating the specific ground for the objection, if the specific ground was not apparent from the context," or plain error exists); *State v. Hooper*, 151 Vt. 42, 46, 557 A.2d 880, 882 (1988). Both the source and the DEA officer provided testimony that would reasonably lead a jury to believe that defendant handed the drugs to the source at his home on March 4. Thus, we find no plain error and affirm the court's judgment.

*Affirmed.*

Motion for reargument denied June 22, 2007.